IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| MICHAEL JAMES NEWSOME, #619654 | § | |
| VS. | § | CIVIL ACTION NO. 6:07cv551 |
| DOUG DRETKE, ET AL. | § | |

## MEMORANDUM OPINION
## AND ORDER DENYING SUMMARY JUDGMENT

Plaintiff Michael James Newsome, a prisoner confined at the Beto Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was referred to the undersigned by consent of the parties pursuant to 28 U.S.C. § 636(c). The present Memorandum Opinion addresses the Defendants' motion for summary judgment (docket entry #47) and the Plaintiff's response (docket entry #49).

### History of the Case

The original complaint was filed on December 7, 2007. The Plaintiff alleged that he was assaulted by Captain John R. McDaniel and Sgt. John Rhinehart. On May 22, 2008, the lawsuit was dismissed because the Plaintiff erroneously sued the Defendants for damages in only their official capacities, but he was told that he could file a motion for relief from the judgment with an attached amended complaint that sues Captain McDaniel and Sgt. Rinehart for damages in their individual capacities for excessive use of force, along with a supplemental state claim for assault and battery. The Plaintiff accordingly responded by filing a motion for relief from the judgment, along with the

1

requisite amended complaint. The motion for relief from the judgment was granted on July 15, 2008. The Defendants filed an answer on August 8, 2008. They filed a motion for summary judgment on October 7, 2008. The Plaintiff filed a response on October 27, 2008.

Plaintiff's Factual Allegations

On April 4, 2008, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The Plaintiff testified that the incident which is the subject of the lawsuit began in a dayroom at the Beto Unit on May 26, 2007. Officer Sknall was on duty at the time. He left the area for a few minutes. A hot box containing breakfast for the inmates was delivered during Officer Sknall's absence. When Officer Sknall returned, the Plaintiff asked him if he and the other inmates in the dayroom could have breakfast. Officer Sknall then permitted all of the inmates to get a food tray, except for the Plaintiff. The Plaintiff complained and asked for a ranking officer, and Sgt. Rhinehart arrived on the scene. Sgt. Rhinehart told the Plaintiff that he was going to be locked up for a disciplinary case. The Plaintiff asked to speak to his supervisor, and Captain McDaniel came into the room. Captain McDaniel ordered the Plaintiff on the floor. The Plaintiff testified that Captain McDaniel assaulted him as he was complying. He added that Captain McDaniel placed a finger in his left eye, pulled on his nose with his fingers and kicked him in head. Sgt. Rhinehart participated in the assault. He jumped on the Plaintiff's back, reinjuring it, and twisted the Plaintiff's legs. The Plaintiff testified that his back has not been the same since the incident. The Court notes that the Plaintiff walked with a cane to and from the courtroom.

The Plaintiff testified that he was transported to the infirmary after the incident. Injuries to his eye and nose were noted. Nurse Hughes testified under oath from the Plaintiff's medical records.

She stated that the medical records specify that his injuries consisted of a scratch on his nose, a bruise near his eye, a red left eye, and a red mark on his temple. His back was not mentioned, although problems with his back were mentioned both before and after the incident.

## Defendants' Motion for Summary Judgment

The Defendants filed a motion for summary judgment on October 7, 2008. They argued that they are entitled to qualified immunity regarding the excessive use of force claim made against them. They argued that they are entitled to official immunity with respect to the supplemental state claim of assault and battery. In support of their arguments, they submitted relevant portions of the Plaintiff's disciplinary and medical records, along with a unit incident report.

The Defendants presented a different version of the facts. They asserted that the incident began because the Plaintiff was fighting with another inmate in the dayroom. Both offenders were ordered to leave the dayroom, and they refused. During the altercation, the Plaintiff had a pushbroom in his possession, which he brandished as a weapon. When instructed to stop fighting, the Plaintiff threatened to inflict harm upon Defendant Rhinehart with the pushbroom by raising the broom handle. Defendant Rhinehart then ordered the Plaintiff to comply with being placed in hand restraints. The Plaintiff initially failed to obey the order. Both offenders were then ordered to lay down on the floor or chemical agents would be used to gain compliance. Both offenders complied with the order. They were placed in hand restraints and taken to the infirmary for physical examination. Medical personnel documented that the Plaintiff sustained a scratch to the nose and contusion to his left eye. The Plaintiff was then returned to his cell.

The Court has reviewed the competent summary judgment evidence attached to the motion for summary judgment. The disciplinary records, Exhibit A, reveal that the Plaintiff pled guilty to

3

the charge he failed to obey an order to back up to the dayroom door and be placed in hand restraints and to lay the broom handle down. He denied threatening Defendant Rhinehart or fighting with another inmate. He was found guilty of all three offenses. An offense report filed by Defendant Rhinehart is consistent with the version of events outlined by the Defendants. He noted that the inmates eventually complied with the order to lay down on the floor and drop the broom handle. At that time, the Defendants placed handcuffs on the Plaintiff and took him to the infirmary. Defendant Rhinehart asserted that no use of force was required to gain compliance.

The unit incident report, Exhibit C, included the following statement from Defendant McDaniel:

> On 05-26-07, at approximately 0215 hours, a disturbance involving K-wing offenders occurred on the George Beto Unit. At the date and time listed above, K-wing offenders engaged in a verbal altercation with staff. The offenders refused to exit the K-wing dayroom when ordered. Offender Newsome, Michael #619654 (B/B/G2) picked up the broom handle and brandished it toward staff in a threatening manner. Offender Mitchel, Leroy attempted to retrieve the weapons from offender Newsome, which resulted in a physical altercation between the two offenders. Security staff entered the dayroom ordering both offenders to release the weapon and lay down on the floor, or chemical agents would be utilized. Both offenders complied with orders given and laid down on the floor without further incident. Both offenders were placed in hand restraints and escorted to the unit infirmary for physicals. Offender Mitchel sustained no injuries, while offender Newsome sustained a scratch to the nose as well as a contusion to his left eye. Both offenders were part of the Chicken Pox quarantine and were placed back in their assigned cells. The weapon (broom handle) was recovered and a chain of custody was initiated, with it being secured in the Use of Force office awaiting proper disposition by the Office of the Inspector General. All pertinent administration were advised regarding the incident.

The injury report included in the unit incident report concluded that the Plaintiff sustained only minor injuries consisting of a scratch to the nose and contusion on the left eye. There was no mention of any back injuries.

4

The Defendants argued that the incident occurred because the Plaintiff failed to obey orders and they had to use force to gain control of the situation. They noted that the qualified immunity analysis involves a two-step process requiring the Plaintiff to (1) assert the violation of a clearly established constitutional right and (2) demonstrate that the actions of which he complains could not reasonably be thought consistent with that right. *Rankin v. Klevenhagen*, 5 F.3d 103, 105 (5th Cir. 1993). They argued that the Plaintiff had not alleged a constitutional violation under the facts of this case in light of *Hudson v. McMillian*, 503 U.S. 1, 19 (1992). They further argued that their actions were objectively reasonable.

The Defendants next argued that they are entitled to official immunity for state claims made against them in their individual capacities. Official immunity is an affirmative defense and functions to protect government employees from state claims in a similar way qualified immunity protects government employees from federal claims. Government employees are entitled to official immunity if the suit arises out of the employee's performance of discretionary duties, in good faith, as long as they were acting within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). The Defendants noted that they are entitled to the affirmative defense of Texas Penal Code § 9.53, which allows for privileged touching in the inmate/prison guard context. They argued that they were performing their duties in good faith in an effort to maintain discipline in the prison.

The Defendants noted that as employees of TDCJ-CID, they were charged with the duty to keep the prison unit safe and secure. They only touched the Plaintiff after he began fighting with the other inmate and brandished a broom handle at Defendant Rhinehart in a threatening manner. As such, their touching of the Plaintiff was privileged and was done in good faith to restore order to the

5

prison unit. They argued that their actions are protected by the doctrine of official immunity and that they are entitled to summary judgment with respect to the supplemental state claim.

The details of the Defendants' legal arguments will be discussed more fully in the Discussion and Analysis section of the Memorandum Opinion.

## Plaintiff's Response

The Plaintiff filed a response on October 27, 2008. He repeated his basic claims. He argued that the Defendants maliciously and wantonly subjected him to pain. He asserted that Defendant McDaniel stuck his finger in his eye and then stuck his fingers in his nose and pulled until the Plaintiff said, "yes, sir." Defendant McDaniel then got up and kicked him in the face. While this was happening, Defendant Rhinehart jumped on his back and pulled his legs back. The Plaintiff argued that their actions subjected him to cruel and unusual punishment.

In support of his response, he cited declarations under penalty of perjury (docket entry #50-2) from inmate Leroy Mitchell, inmate Tryd Wysinger, inmate Anthony D. Jones and himself. The Plaintiff also cited the disciplinary records. Leroy Mitchell stated in his declaration that there was an altercation between himself and the Plaintiff. Defendant Rhinehart ordered them to lay on the ground and noted that gas would be used. Mitchell stated that he told the Plaintiff to "chill, it isn't worth it." He added that the Plaintiff had calmed down by the time the officers entered the dayroom. Moreover, he had thrown the broom down and was proceeding to lay on the ground. After the Plaintiff was handcuffed and secured, Defendant McDaniel kicked the Plaintiff in the face. Mitchell stated that he told the officers to "chill out," which prompted Defendant McDaniel to slam him to the floor.

Inmate Wysinger had a slightly different perspective. He asserted that Defendant McDaniel slammed the Plaintiff to the ground, yelled in his ear and kicked him in the face. He stated that he saw Defendant Rhinehart standing on the Plaintiff's back and making threatening gestures.

Inmate Anthony D. Jones stated that the Plaintiff was complying with orders to get on the ground when Defendant McDaniel rushed towards him and forced him to the ground. After he placed handcuffs on the Plaintiff, Defendant McDaniel stood up and kicked the Plaintiff in the face. Jones also stated that he observed Defendant McDaniel place his fingers in the Plaintiff's left eye and then his nose and started pulling until the Plaintiff said, "yes, sir."

The Plaintiff's own statement added to his testimony at the *Spears* hearing. He stated that he complied with Defendant McDaniel's order to throw down the broom and get down on the floor. Defendant McDaniel rushed him as he was getting down on the floor. Defendant Rhinehart jumped on his back and grabbed his legs. Defendant McDaniel struck him in the head and face. He then stuck his fingers in the Plaintiff's left eye. The Plaintiff stated that his vision became blurry and that he still has a dot on that eye. Defendant McDaniel then placed his fingers in the Plaintiff's nose and started pulling until he said, "yes, sir." The Plaintiff said his nose was bleeding by then. Defendant McDaniel then got up and kicked him in the face. The Plaintiff stressed that he was handcuffed the whole time. He added that Defendant McDaniel reviewed the injury report and had the nurse change the report as to the Plaintiff's injuries. He reiterated that his back was injured.

The Plaintiff argued that these facts show that force was not used in a good faith effort to maintain or restore discipline; instead, the Defendants acted maliciously and sadistically to cause harm. He asserted that the force used was excessive because it was meant to cause harm, as opposed to keeping order. He argued that the Defendants are not entitled to qualified immunity with respect

to his § 1983 claims. He further argued that the Defendants are not entitled to official immunity with respect to his assault and battery claims.

## Discussion and Analysis

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.,* 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.),

*cert. denied*, 488 U.S. 926 (1988); *see also Celotex*, 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).

Courts must employ summary judgment device cautiously. *Jackson v. Procunier*, 789 F.2d 307 (5th Cir. 1986). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980).

The Defendants argued that they are entitled to summary judgment based on qualified immunity with respect to the excessive use of force claim. The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The doctrine of qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing*

9

*Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The objective reasonableness of an official's conduct must be measured with reference to the law as it existed at the time of the conduct in question. *Anderson*, 483 U.S. at 639; *Jackson v. City of Beaumont Police Department*, 958 F.2d 616, 620 n. 5 (5th Cir. 1992) (citations omitted). *See King v. Chide*, 974 F.2d 653 (5th Cir. 1992) (discussing qualified immunity in the context of force used against an arrestee). The evaluation of a qualified immunity claim involves a two-step inquiry. *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir. 1994); *Colston v. Barhnart*, 130 F.3d 96, 99 (5th Cir. 1997). The first step is to determine whether the plaintiff has shown a violation of a clearly established constitutional right. *Id.* The second step requires the court to determine whether the defendant's conduct was objectively unreasonable under existing clearly established law. *Id.*

Issues concerning qualified immunity should be resolved at the earliest possible stage. When factual issues are still in dispute at the time of trial, a court may not be able to make a decision as to whether officers are entitled to qualified immunity until the factual issues are resolved by a jury. *See Lampkin v. City of Nacogdoches*, 7 F.3d 430 (5th Cir. 1993). In such cases, the jury will have to decide "the underlying historical facts in dispute that are material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of existing law and facts available to them." *Id.* at 435. *See also Presley v. City of Benbrook*, 4 F.3d 405, 409-10 (5th Cir. 1993). The Fifth Circuit has also held that "while qualified immunity ordinarily should be decided by the court long before trial, if the issue is not decided until trial the defense goes to the jury which must then determine the objective legal reasonableness of the officers' conduct." *McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000).

The Plaintiff argued that his constitutional rights were violated when he was subjected to excessive use of force. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id.* at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id.* at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.*

The Supreme Court added the following caveat concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson v. McMillian*, 503 U.S. at 9-10.

On remand in *Hudson*, the Fifth Circuit concluded that the following factors are relevant in the inquiry whether there was an excessive use of force: "1. the extent of the injury suffered; 2. the need for the application of force; 3. the relationship between the need and the amount of force used; 4. the threat reasonably perceived by the responsible officials; and 5. any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992). *See also Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998). On the other hand, the Fifth Circuit has repeatedly emphasized that an inmate must have suffered more than a *de minimis* physical injury. *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). There must always be some injury, albeit insignificant. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). Even though there must be more than a *de minimis* physical injury, "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d at 924.

In the present case, the parties have submitted competent summary judgment evidence presenting different versions of the facts. The Plaintiff asserted that Defendant McDaniel assaulted him as he was complying with orders to lay down on the floor. He alleged that Defendant McDaniel placed a finger in his left eye, pulled on his nose with his fingers and kicked him in the head. He alleged that Defendant Rhinehart jumped on his back, reinjuring it, and twisted his legs. The Defendants, on the other hand, stressed that the incident began by the Plaintiff fighting with another inmate. Both offenders were ordered to leave the dayroom, and they refused. During the altercation, the Plaintiff had a pushbroom in his possession, which he brandished as a weapon. When instructed to stop fighting, the Plaintiff threatened to inflict harm upon Defendant Rhinehart with the pushbroom by raising the broom handle. Defendant Rhinehart then ordered the Plaintiff to comply

with being placed in hand restraints. The Plaintiff initially failed to obey the order. The disciplinary records reveal that the Plaintiff pled guilty to disobeying an order. Both offenders were ordered to lay down on the floor and warned that chemical agents would be used to gain compliance. Both offenders complied with the order, were placed in hand restraints, and taken to the infirmary for physical examination. Medical personnel documented that the Plaintiff sustained a scratch on his nose, a bruise near his eye, a red left eye, and a red mark on his temple. His back was not mentioned with respect to the use of force incident, although back problems were documented both before and after the incident.

An analysis of the conflicting versions of the facts in light of the five *Hudson* factors leads the Court to conclude that there are genuine issues of material fact that must be resolved by a jury. The first *Hudson* factor concerns the extent of the injury suffered. The Defendants focused on the Plaintiff's injuries as listed in the injury report from the incident that documented only a scratch to the nose and contusion to the left eye. By comparison, Nurse Hughes testified under oath from the Plaintiff's actual medical records that indicated that the Plaintiff sustained a scratch on his nose, a bruise near his eye, a red left eye, and a red mark on his temple. The Plaintiff also noted that Defendant McDaniel made his nose bleed and that his back was reinjured. Medical records reveal that he had a history of complaints about his back both before and after the incident, although there was no mention of his back during the use of force examination. It is again noted that the Plaintiff also walked with a cane during the *Spears* hearing. The facts are in dispute concerning the extent of the Plaintiff's injuries from the use of force incident, which must be resolved by a jury.

The second factor concerns the need for application of force. The material facts here are once again in dispute. The Defendants presented competent summary judgment evidence showing that

the Plaintiff was engaged in a fight with another inmate, that he raised the broom handle and threatened Defendant Rhinehart, and that he initially failed to obey orders. The Plaintiff, on the other hand, presented competent summary judgment evidence showing that he was complying with orders and getting on the ground by the time the Defendants approached him. Handcuffs were placed on him. Then, after the situation was under control, Defendant McDaniel placed his fingers in the Plaintiff's eye and nose and kicked him, while Defendant Rhinehart jumped on his back, placed his knees in his back and pull up his feet. Viewing these facts in a light most favorable to the nonmovant, the Plaintiff, the evidence supports a conclusion that the was no need for the application of such force after the Plaintiff was handcuffed and under control.

The third factor is the relationship between the need and the amount of force used. Once again, the material facts are in dispute on this issue. The version of events presented by the Defendants specify that they did not use any force after handcuffing the Plaintiff. The version of events presented by the Plaintiff is that all of the objectionable conduct employed by the Defendants occurred after he was handcuffed and that there was no need for such force since he was under control. Viewing these facts in a light most favorable to the Plaintiff, the evidence supports a conclusion that the amount of force used was excessive to the need.

The fourth factor concerns the threat reasonably perceived by the responsible officials. Once again, there are genuine issues of material fact in dispute. The Defendants submitted competent summary judgment evidence showing that they were confronted with a security threat. More specifically, there was an altercation between the Plaintiff and another inmate and that the Plaintiff initially refused to obey orders. The Defendants were confronted with a threat that required their attention. The Plaintiff, on the other hand, focused on the actions taken by the Defendants after he

was handcuffed and under control. Viewing the facts in a light most favorable to the Plaintiff, the evidence supports a conclusion that the Plaintiff was not a threat at the time of the Defendants' objectionable conduct. The Plaintiff's version of events supports a conclusion that the Defendants subjected him to unnecessary and wanton pain after he was already under control.

The final factor concerns any efforts made to temper the severity of the forceful response. Once again, there are genuine issues of material fact in dispute. The Defendants asserted that they engaged in a number of steps to temper the severity of the forceful response. They submitted competent summary judgment evidence showing that they tried to stop the security problem by ordering the inmates to leave the dayroom, but they refused. Defendant Rhinehart ordered them to stop fighting, which prompted the Plaintiff threatened to inflict harm upon Defendant Rhinehart when he raised the broom handle. Defendant Rhinehart then ordered the Plaintiff to comply with being placed in hand restraints. The Plaintiff initially failed to obey the order. Both offenders were ordered to lay down on the floor or chemical agents would be used to gain compliance. Both offenders complied with this order. The Plaintiff's claims, on the other hand, focus on the Defendants' conduct after they gained compliance. At that juncture, there was no need for a forceful response, but the Defendants engaged in actions that were unnecessary and wanton.

Overall, viewing the facts in a light most favorable to the Plaintiff, the nonmovant, the Court concludes that the Plaintiff has stated a violation of his Eighth Amendment rights by subjecting him to excessive use of force.

The second step in the qualified immunity analysis concerns whether the Defendants' conduct was objectively reasonable under existing clearly established law. Once again, there are genuine issues of material fact in dispute that require a trial. The Defendants focused on acts that

15

led up to the Plaintiff being handcuffed. If their actions had stopped at that time, then a conclusion could be made that their actions were reasonable and that they acted in order to restore discipline. However, the Plaintiff focused on facts that occurred after he was handcuffed and allegedly under control. The Defendants deny his factual allegations and claim that no force was used. Nonetheless, viewing the facts in a light most favorable to the Plaintiff, the actions attributed to the Defendants after the Plaintiff was handcuffed were objectively unreasonable. The jury will have to determine which set of facts to believe. The Defendants are not entitled to summary judgment based on qualified immunity.

The Defendants are not entitled to summary judgment with respect to the supplemental state claim of assault and battery for essentially the same reasons. The Fifth Circuit has made the following observations:

> The "good faith" test applied by Texas law in determining official immunity is evaluated under substantially the same standard used for qualified immunity determinations in § 1983 actions. . . . Any difference between the qualified immunity standard and the official immunity standard id immaterial here, and we reach the same result on this claim as we do on the § 1983 claim: the officers are not entitled to summary judgment.

*Meadours v. Ermel*, 483 F.3d 417, 424 (5th Cir. 2007) (citations omitted). "Under Texas law, government officials have 'official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority.'" *Linbrugger v. Abercia*, 363 F.3d 537, 544 (5th Cir. 2004), citing *City of Lancaster v, Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). In *Linbrugger*, the Fifth Circuit went on to note that it lacked jurisdiction to consider an interlocutory appeal regarding official immunity because there were genuine issues of material fact. *Id.* at 545. "[O]fficial immunity hinges on whether an official's activities were undertaken in 'good faith,' i.e. whether they were objectively reasonable."

*Coons v. Lain*, 277 Fed. Appx. 467, 471 (5th Cir. 2008). A district court errs when it fails to accept the nonmoving party's version of events as true and grants summary judgment based on official immunity by accepting the moving party's version of events. *Id.* In the present case, the Defendants are not entitled to summary judgment based on official immunity with respect to the state assault and batter claim for the same reason they are not entitled to summary judgment based on qualified immunity with respect to the excessive use of force claim. There are genuine issues of material fact in dispute that must be resolved by a jury. Viewing the facts in a light most favorable to the Plaintiff, the nonmoving party, a conclusion can be made that the Defendants were not acting in good faith. It is therefore

**ORDERED** that the Defendants' motion for summary judgment (docket entry #47) is **DENIED**.

**So ORDERED and SIGNED this 30th day of October, 2008.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE